## COSPER v. GOLD.

## COSPER v. GOLD.

APPEALS; JUDGMENTS; PATENTS; INTERFERENCE; PRIORITY OF INVENTION;
CLAIMS AND SPECIFICATIONS; DRAWING.

1. To determine what the decision is from which an appeal is prosecuted, the court will look to its substance, its necessary legal effect and operation, rather than to its mere form. (Following *Moore* v. *Heany*, 34 App. D. C. 31.)

2. The necessary effect of an order of the Commissioner of Patents, declaring that a party in interference who has been found not to be entitled to make the claims of the issue was not the prior inventor, is to award priority to his opponent; and the order is therefore final and appealable.

3. Where the same subject-matter is in controversy in three separate interferences, they may be properly consolidated, in accordance with the practice in the Patent Office, for hearing and determination as one.

4. Where three separate interferences are consolidated in the Patent Office and heard as one, and the Commissioner makes an order that the senior party was not the prior inventor, this is an award of priority against him as to each of his opponents, although not a final decision of priority in favor of either of such opponents as against the other; it is, nevertheless, a final order as against the senior party, and is appealable.

5. Where, in an interference, the right of one party to make the claims of the issue is presented on a motion to dissolve on that ground, two questions arise, namely, the right to make the claims and priority of invention. If the first is decided adversely to the claimant, the formal award of priority goes to his opponent as a matter of course. If decided in his favor, the issue of priority in fact is to be determined also before the decision becomes final. If held that the claims can be made, and the question of priority is determinable on the record, it can be awarded at the same time. When the issue of priority is not determinable on the record, but on testimony that has not been taken because of the first decision against the right to make the claims, the parties have the right to take that testimony

before final hearing on that issue. (Citing *Lindmark* v. *De Ferranti,* 34 App. D. C. 445; *Podlesak* v. *McInnerney,* 26 App. D. C. 399; *Wickers* v. *McKee,* 29 App. D. C. 4; *Re Fullagar,* 32 App. D. C. 222; *Cosper* v. *Gold,* 34 App. D. C. 194.) If the question of priority is determinable on the record, or the necessary testimony has been taken, the whole case is likewise before the Commissioner, and thereafter before this court on appeal, and neither is limited in it power of review by reason of the fact that the decisions of the tribunals below have all been founded exclusively on the question of the right to make the claims.

6. Concurrent decisions of the expert tribunals of the Patent Office carry a very strong presumption of their correctness.

7. It is unnecessary in applying for a patent for a car heating apparatus to include a representation of the car in connection with the drawing illustrating the apparatus. (Citing *Kilbourn* v. *Hirner,* 29 App. D. C. 54; *Hopkins* v. *Newman,* 30 App. D. C. 402.)

8. The drawing accompanying an application for a patent for a car heating apparatus *held* to sufficiently disclose the location of a thermostat connected therewith outside or underneath the car floor.

9. When new matter is introduced into an application for a patent, it cannot be allowed to the destruction of an established intervening right. (Following *Bechman* v. *Wood,* 15 App. D. C. 484.)

10. Where the drawing accompanying an application for a patent for a car heating apparatus sufficiently disclosed the location of a thermostat outside the car, an amendment to the application specifically locating the thermostat on the outside *held* not to introduce entirely new matter, and therefore permissible in case of rival applications. (Citing *McBerty* v. *Cook,* 16 App. D. C. 133; *Luger* v. *Browning,* 21 App. D. C. 201; *Furman* v. *Dean,* 24 App. D. C. 277.)

Nos. 648 and 649. Patent Appeals. Submitted November 8, 1910. Decided February 6, 1911.

HEARING on separate appeals from decisions of the Commissioner of Patents in interference cases. *Reversed.*

The facts are stated in the opinion.

*Mr. Frederick P. Fish, Mr. Robert M. Pierson,* and *Mr. Charles Neave* for appellant.

*Mr. William A. Reading, Mr. Arthur C. Fraser,* and *Mr. Otto R. Barnett* for the appellees.

Mr. Chief Justice Shepard delivered the opinion of the Court:

These are two interference cases involving priority of invention of an improved automatic steam heating system. No. 648 was declared between applications of William P. Cosper, Egbert H. Gold, and Edward E. Gold respectively. No. 649 was declared between applications of William P. Cosper and Egbert H. Gold.

While the issues of the two cases are not identical, the same question is involved. They have for that reason been heard together in the Patent Office and in this court.

By stipulation, the records of the two former appeals have been made a part of this record. Those appeals were dismissed because there had been no final adjudication of the controversy. (34 App. D. C. 194–198.)

Cosper's application was filed April 1, 1901. Edward E. Gold filed July 16th, 1904; and Egbert H. Gold filed February 11, 1905. After repeated objections and amendments, the claims of Cosper, five in number, were rejected by the Primary Examiner. His decision was reversed January 8, 1908, by the Examiners-in-Chief, and the claims allowed. In March 1908, the interferences were declared between him and the two Golds respectively, on an issue in three counts. Each of the Golds filed motions to dissolve, the only ground of which that is important being that Cosper is not entitled to make the claims of the issue. The Examiner to whom the motion was referred held that Cosper was not entitled to make the claims, and the interference was dissolved. The decision was limited to this. Cosper appealed in turn to the Examiners-in-Chief and the Commissioner, who affirmed that decision. No award of priority having been made, this court dismissed the appeals for want of a final adjudication as above stated.

On return to the Patent Office, Cosper, in each case, petitioned the Commissioner to reconsider and reverse his decision that Cosper had no right to make the claims. In the three party case (No. 648) he prayed that his status as a contestant in the

interference be restored, and that the interference be remanded to the Examiner of Interferences with instructions to render judgment of priority against Egbert H. Gold, and to set times for taking testimony as to priority between petitioner and Edward E. Gold. In the case in which Egbert H. Gold was his single opponent (No. 649), he prayed a reversal of the Commissioner's decision on his right to make the claims, and that the case be referred to the Examiner of Interferences with instructions to render judgment of priority against Egbert H. Gold. The ground in each petition for asking that judgment be rendered against Egbert H. Gold was that, as the latter, being the junior party, had failed in his preliminary statement to overcome petitioner's filing date, therefore petitioner was entitled to judgment of priority on the record.

The Commissioner's decision contains an elaborate review of the question of the right of Cosper to make the claims. Adhering to his former opinion, he denied both petitions. He said in conclusion: "In view of the holding of the court in the present case, however, it is believed that the final action of the Commissioner in such case should be in the form of an award of priority, rather than a dissolution of the interference. * * * In view of the above decisions, it is thought that the court will entertain an appeal from a final order entered in this case, to the effect that Cosper is not the prior inventor of the subject-matter of the issue. For the reasons stated above, my decision of June 1, 1909, will be modified as to the order dissolving the interference, and in place thereof a final order will be entered holding that, in view of the conclusions reached in said decision, Cosper is not the prior inventor of the subject-matter of the issue of said interference." The same decision was made in the second case. (No. 649.)

From those decisions these appeals have been prosecuted.

A preliminary question is presented by the motions of the several appellees to dismiss each appeal for want of jurisdiction.

The grounds of the motions are: 1. The decisions appealed from are not final. 2. Because the appeal to the Commission-

er was from a decision dissolving the interference, and he had no jurisdiction to render any decision as to priority. 3. The decision that the appellant was not the prior inventor is not one within the jurisdiction of the court to review. 4. The decision of the Commissioner in legal effect affirms the decision dissolving the interference, and is interlocutory only.

To determine what the decision is from which an appeal is prosecuted, the court will look to its substance, its necessary legal effect and operation, rather than to its mere form. *Moore* v. *Heany*, 34 App. D. C. 31–39.

In the two party case (No. 649), the necessary effect of the order declaring that Cosper was not the prior inventor was to award priority to his opponent, Egbert H. Gold. In that case, if Cosper was entitled to make the claims, he was entitled to an award of priority on the record. No question of fact was put in issue. Hence, it having been decided that he was not entitled to make the claims, the resulting decision that he was not the prior inventor was, in substance and effect, a decision that Egbert H. Gold was the prior inventor. In that case the decision was necessarily final and appealable.

The three party case presents a case of greater difficulty. Three separate cases were involved in this one proceeding. There was a case between the applications of Cosper and Egbert H. Gold, another between Cosper and Edward E. Gold, and another between Egbert H. Gold and Edward E. Gold. These were separate cases and might have been so conducted; but, as the same subject-matter was in controversy in each case, they were properly consolidated, in accordance with the practice of the Patent Office, for hearing and determination as one. 2 Robinson, Patents, sec. 612; *Bell* v. *Gray,* 15 Off. Gaz. 776 (C. D. 1879, 42–45).

While the effect of the decision in this case, that Cosper was not the prior inventor, was an award of priority against him as to each separate opponent, as in No. 649, it was not a final decision of priority in favor of either opponent as against the other. It was, nevertheless, a final decision against Cosper. He was finally deprived of his right, though it is true that, had

he acquiesced in the decision, the question of priority would still be open between Egbert H. and Edward E. Gold. As we have seen, however, this is not an equity case involving conflicting claims of several parties, the decree in which, to be final, must make a determination of the entire controversy.

Conceding that the decision was final as to Cosper, it is contended that it was equivalent to a final rejection of his application, from which alone he could appeal according to the usual practice in the case of the rejection of an application. *Re Fullagar,* 32 App. D. C. 222–230. That was a case of interference between Fullagar's reissue application and the first application of his opponent. The final decision in the case was not that Fullagar had no right to make the claims, but that his showing was not sufficient to warrant the grant of a reissue of his patent; in other words that his application was not allowable. This was the decision, and there was no award of priority to his opponent. It was held that he could only take an *ex parte* appeal in the ordinary way. In the present case there was no question as to the regularity of the application, but solely as to the right of Cosper to make the claims under the specifications of that application. Under the early rule prevailing in this court, the right of the parties to make the claims of the issue was not a question in the interference that could be brought upon appeal. That rule was reversed in *Podlesak* v. *McInnerney,* 26 App. D. C. 399–405, where it was declared that the court would "take jurisdiction of the question of the right to make the claim as an ancillary question to be considered in awarding priority of invention." As was held in the former appeal (34 App. D. C. 194), the decision of that question without a final award also of priority is interlocutory, and therefore not appealable. The decision in these cases goes further, and is substantially that Egbert H. Gold and Edward E. Gold, in their respective cases, are prior inventors to Cosper.

Assuming that such is the effect of the decision of the Commissioner, it is contended that he had no jurisdiction, in either case, to render any such decision. The proposition is that nothing was before him but the motion to dissolve, and he had no

power to decide any other question than that.   It is true that this was the sole ground of the decision of the tribunals below, but it does not follow that it was the only question finally determinable in the case.   The declaration of the interference raised the issue of priority of invention, and the question of the right of Cosper to make the claims was ancillary thereto. When decided adversely to Cosper, the opponent was entitled to the award of priority as a matter of course.   It was the basis of the award of priority.   *Wickers* v. *McKee,* 29 App. D. C. 4–19.   And to the same effect is the decision dismissing the former appeal.   34 App. D. C. 194.

Under the practice established by the decision in *Podlesak* v. *McInnerney,* 26 App. D. C. 399, two questions arise in every interference case where the right of one party to make the claims of the issue is presented on a motion to dissolve on that ground,—the right to make the claims, and the priority of invention.   If the first shall be decided adversely to the claimant, the formal award of priority goes to his opponent as a matter of course.   If decided in his favor, the issue of priority in fact is to be determined also before the decision becomes final. If held that the claims can be made, and the question of priority is determinable on the record, it can be awarded at the same time.   When the issue of priority is not determinable on the record, but on testimony that has not been taken because of the first decision against the right to make the claims, the parties have the right to take that testimony before final hearing on that issue.   *Lindmark* v. *De Ferranti,* 34 App. D. C. 445–451. The appeal from that decision, when made, will bring up for review, also, the decision of the ancillary question of the right to make the claims.   It is unfortunate that when the award of priority rests solely, from first to last, on the preliminary decision against the right of a party to make the claims, the reversal of that decision may not, in the majority of instances, put an end to the litigation.

The difficulty of the situation arises out of the change of the practice resulting from a decision in *Podlesak* v. *McInnerney,* and cannot be avoided.   It is one that constantly arises in pro-

ceedings at law and in equity, as pointed out in *Lindmark* v. *De Ferranti, supra.*

When the decision is against the right of the party to make the claims, and the award of priority to the opponent is on that ground alone, the whole case is brought up on appeal to the Commissioner. If the decision is held erroneous, and the right to priority is not determinable on the record made by the preliminary statement of the other party, the case goes back for the taking of the necessary testimony on the issue of fact. If the question of priority is determinable on the record, or the necessary testimony shall have been taken, the whole case is likewise before the Commissioner, and thereafter before the court on appeal, and neither is limited in its power of review by reason of the fact that the decisions of the tribunals below may have all been founded exclusively on the question of the right to make the claims.

The questions raised on the motion to dismiss have been forcibly presented, and it is not without difficulty that we have arrived at the conclusion that the Commissioner had jurisdiction to render the decision denying priority to Cosper, and that his decision is such a finality as to authorize this court to take jurisdiction of the appeal therefrom.

The first question on the merits of each appeal is the right of Cosper to make the claims of the issue under the disclosure of his original application. The issue is defined as follows:

"1. In a steam heating apparatus, the combination of an apartment to be heated, a radiator therein, a steam-inlet valve for said radiator, and a thermostat in the line of the radiator discharge located on the outside of said apartment, and controlled by changes in outside temperature, so as to vary the normal standard of regulation inversely to the changes in said outside temperature.

"2. In a car heating apparatus, the combination with the car of a radiator therein, and an automatic regulator carried by the car and comprising a steam-inlet valve for said radiator, and a thermostat located below the car in the path of the radia-

tor discharge, and subject to the temperature of the atmosphere outside of the car.

"3. In a car heating apparatus, the combination with a car of a supply pipe, radiator pipes, an outlet into the air from said radiator pipes, and mechanism for automatically controlling the admission of heating fluid from the supply pipe to the radiator pipes, consisting of an intermediate valve between said pipes, and thermostatic means exposed to the outer air and to the heat of the discharge from the radiator pipes, and controlling said intermediate valve, whereby the admission of heating fluid from the supply pipe to the radiator pipes is controlled by the temperature of the outer air, and that of said heating fluid after it has passed through the radiator pipes."

After frequent rejections upon references, Cosper's amended claims were finally held patentable, notwithstanding, for the reason that his thermostat is claimed, as located on the outside of the car or apartment, to be heated and controlled by changes in the outside tememprature. These claims were allowed without any question having been suggested that they were not within the description of the specifications of his original application. The question was raised by the opposing parties in the interference on the motion to dissolve, and decided against Cosper's right by each tribunal of the office in succession; and that the conclusion has been reaffirmed by the Commissioner in the decision appealed from. These concurrent decisions of the expert tribunals carry a very strong presumption of their correctness.

Cosper's application was filed April 1, 1901. Edward E. Gold entered the office July 16, 1904, and Egbert H. Gold, with the application in interference, on February 11, 1905. It appears from an additional record brought up on motion, that the latter filed an earlier application for patent for an improved automatic heating system, on December 14, 1903, which was not included in the interference. The claims of this application were rejected, and new ones were added from time to time as rejections were made. Finally, on December 16, 1908, the applicant called attention to the fact that the subject-matter of certain amended claims had been affirmed on the appeal of

Cosper to the Examiners-in-Chief, and stated that "the appli-
cant, in order to preserve all of his rights, has added, by amend-
ment to the present application, the claims of the several counts
in interferences No. 28,667 and No. 28,668, which involve a
later application of the applicant and the application of Cosper
above referred to." The interferences referred to are those
under consideration.

In his original application Cosper stated: "My invention re-
lates to steam heating systems, particularly adapted for use in
railway cars, and the object of my invention is to produce an
automatic controlling device for admitting steam into a steam
heating system, and for regulating the temperature of the apart-
ments in which the heating system is placed." This object, as
pointed out, is obtained by means of a plan shown in the accom-
panying drawings, which consist of elevations partly in section.
As he did not specifically state that his thermostat was located
under or outside of the car, his right to make the claims, in
which that feature is controlling, depends upon the disclosure of
that drawing, for which reason it is here copied:

Fig 1

There is no representation of the car body or floor in this
drawing. In car heating by the supply of steam from the en-
gine, the supply pipe, usually, and it is believed invariably,

runs under and near the bodies of the cars composing the train. This drawing, illustrating such a system, shows the supply pipe thus located and connected with the pipes which run along near the floor inside the car and supply the radiators. The thermostat is placed in the discharge passage from the radiator, and is connected with a steam admission valve in the service pipe leading from the main steam supply pipe. When steam is first turned on and flows through the main pipe, the thermostat is cold and contracted, and, the valve being opened, the steam enters the radiator sections and begins to heat them. The radiator sections having been cold, a large amount of steam will condense and flow from the discharge pipe as water. This water will become more and more heated as the heat of the radiators increase, and some steam is likely to escape with it through the discharge pipe. This will operate to expand the thermostat, which will cause it to move the admission valve, to which it is connected, so as to shut off a further supply of steam to the radiators, until such a time as that the thermostat will begin to grow cold again. The cooling of the thermostat is more rapid and effective when exposed to the cold outer air, as it would be under the car floor.

In interpreting the drawing, the well-known facts must be borne in mind; that the steam supply pipe underlies the car; that the service pipe penetrates the car floor to its connection with the radiator system; and that these radiators are located near the floor.

The drawing representing these shows the end of the discharge pipe in which the thermostat is located as low, and even slightly lower than the steam supply pipe. The discharge must necessarily be situated lower than the radiator, or else it will not discharge as it is intended to do. If it were intended to locate the discharge inside the car, there would be a drain pipe connected with it to carry the escaping water and steam out of the car, for it would be absurd to suppose that it was intended to discharge it inside and on the car floor. Replying to this argument founded on the representation in the drawing, the Examiners-in-Chief said: "The argument is not at all con-

clusive, since the drawings of patent applications are not ordinarily drawn to scale, and there is no reason for assuming, even if it be taken for granted, that the thermostat is in such a position as to hang down below the car floor, that a closure for said thermostat was not in contemplation. Neither the car nor its floor is shown in the original drawing, and the thermal influence of the external air upon the thermostat is therefore a matter of speculation." The Commissioner adopted this conclusion, save as to the closure of the thermostat. We attach no importance to the failure to give a representation of the car in connection with the foregoing drawing. It is not necessary to add a drawing of that which was well known to everyone, whether skilled in the art or not. This reasonable doctrine, well established in the Patent Office, has been repeatedly sanctioned by this court. *Kilbourn* v. *Hirner,* 29 App. D. C. 54, 60; *Hopkins* v. *Newman,* 30 App. D. C. 402–410; and cases cited.

Had a car floor been shown above the discharge in this drawing, as is indicated by the compliance with the request for an addition to the drawing for that purpose in the progress of the application to allowance, there could have been no doubt as to the disclosure of the inventor. It is true that in many instances, the fact that a Patent Office drawing is not usually drawn to a scale might have material weight in determining a question of this kind. But with a general knowledge of the art and the uses to which this system was intended to be practically applied, the inference is readily deducible that the thermostat was to be placed outside the car at least. This is strengthened by the fact that if not located outside the car, it must necessarily discharge water and steam therein. Considering then the arrangement of the pipes, radiators, connections, and traps as shown in that drawing, and adapted to the well-known car body, we cannot escape the conclusion that, notwithstanding a failure of the specifications to particularly describe the location of the thermostat with respect to the car floor, that it was in the mind of the inventor it should be outside or underneath the floor.

Cosper, as is frequently the case with inventors, evidently thought his invention broader than it is, and, as is constantly

the case, made amendments and changes to respond to the objections founded on references to other patents. After many rejections, and on appeal to the Examiners-in-Chief, the novel feature of the system, giving it patentability over the references, was found to reside in this outside location of the thermostat. This practice of amendment upon suggestion, so essential to the beneficial operation of the patent system, has been given a wide range. A reasonable limitation upon it is that when new matter is introduced, it cannot be allowed to the destruction of an established intervening right. *Bechman* v. *Wood,* 15 App. D. C. 484–498; and cases cited. That case has been cited as controlling the right of the amendments of Cosper specifically locating the thermostat on the outside, in obedience to the suggestions of the Office. It is not applicable. Having held that the drawing sufficiently disclosed the location of the thermostat outside the car, the amendment did not introduce entirely new matter, and was therefore permissible in case of rival applications, under a well-established rule. *McBerty* v. *Cook,* 16 App. D. C. 133–138; *Furman* v. *Dean,* 24 App. D. C. 277–281; *Luger* v. *Browning,* 21 App. D. C. 201–206. As was said in the last cited case: "When new matter is introduced into an application, it cannot be allowed to dominate previous claims of another applicant; but that when matter has been previously disclosed, although not formally claimed, it is proper to be included in a subsequent formal claim, and may take precedence of previous claims advanced by another applicant."

This renders it unnecessary to examine the various dates of filing and amendment of the several applications in interference. For the same reason we will not undertake to examine the record of the independent application, filed December 14, 1903, of Egbert H. Gold, and brought up on motion to amend the record in case No. 649, to ascertain the date when the claim was made thereunder covering this material feature of the present issue. The agreement on behalf of the appellee has taken a wide range on the question of patentability, which we do not regard at this time a question for our consideration.

In accordance with our conclusion that Cosper was entitled

ι᾽ make the claims under his original application, we are con-
᠊᠊ rained to reverse the decision in each case. As the record
ᴔhews that Cosper's application was filed April 1, 1901, and
ᴔhe preliminary statement of Egbert H. Gold in each interfer-
ence alleges his conception of the invention on June 15, 1903,
more than two years thereafter, had Cosper's right to make the
claims been affirmed by the Commissioner, he would have been
entitled to an award of priority upon the record. We do not
find the preliminary statement of Edward E. Gold in the record.
If it is such, as seems to be conceded, that Cosper was not en-
titled to ask an award of priority against him on the record,
the question of priority in fact remains to be determined be-
tween them, on testimony taken for the purpose. Had the Com-
missioner upheld the right of Cosper to make the claims, all
that he could have done, if requested, as between him and Ed-
ward E. Gold, would have been to remand the cause to the
Examiner of Interferences for further hearing on that issue,
giving Edward E. Gold, as the junior party, a reasonable op-
portunity to move for leave to take the testimony, in default
of which Cosper would be entitled to an award of priority
against him.

For the reasons given, the decision in each case will be re-
versed, and this decision will be certified to the Commissioner
of Patents as required by law.                      *Reversed.*